## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| Pharma Base S.A. and Aspiration Trust Reg., | ) )<br>) Civil Action No. 07-____-___<br>) |
| Plaintiffs, | ) ) |
| v. | ) **JURY TRIAL DEMANDED**<br>) |
| HVL LLC (a.k.a. H.V.L. and Douglas Laboratories) and Hi-Vidomin Laboratories, Inc., | ) )<br>)<br>) |
| Defendants | ) ) |

## COMPLAINT

Plaintiffs, Pharma Base S.A. ("Pharma Base") and Aspiration Trust Reg. ("Aspiration Trust"), for their Complaint against Defendants HVL LLC ("HVL") and Hi-Vidomin Laboratories, Inc. ("Hi-Vidomin"), allege the following:

### THE PARTIES

1.      Pharma Base is a corporation organized and existing under the laws of Switzerland, and has a principal place of business at Churerstrasse 166, CH-8808 Pfaffikon, Switzerland.

2.      Aspiration Trust Reg. ("Aspiration Trust") is a corporation organized and existing under the laws of Liechtenstein having a principal place of business at Bannholzstrasse 16, P.O.Box 381, FL-9490 Vaduz, Principality of Liechtenstein, and is a wholly-owned subsidiary of Plaintiff Pharma Base.

3.      On information and belief, HVL is a limited liability corporation organized and existing under the laws of the state of Delaware, having a principal place of business at 600 Boyce Road, Pittsburgh, Pennsylvania 15205, United States of America.

4.    On information and belief, Hi-Vidomin is (a) a corporation organized and existing under the laws of the state of Delaware, having a principal place of business at 300 Delaware Avenue, Wilmington, Delaware 19801, (b) is a wholly-owned subsidiary of HVL and (c) acts as a holding company for HVL.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction pursuant to 15 U.S.C. §§ 1501 *et seq.* ("the Lanham Act"), and 28 U.S.C. §§ 1331, 1332(a), 1338(a) and/or 1367(a).

6.    On information and belief, Defendants HVL and Hi-Vidomin, in addition to being citizens of Delaware, have been and are doing business in this District.

7.    On information and belief, Defendant HVL has placed goods in the stream of commerce knowing that such goods likely would enter this District, and such goods have entered this District.

8.    On information and belief, Defendant HVL has offered to sell and sold goods in this District and continues to offer to sell and sell goods in this District.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## NATURE AND CIRCUMSTANCES OF THE PARTIES' DISPUTE

10.    Plaintiff Pharma Base is a supplier of Coenzyme Q10 fast melting tablets (the "Fast Melt Product") that are marketed and sold under the trademarks COQMELT and QMELT in a variety of countries throughout the world.

11.    Plaintiff Pharma Base's Fast Melt Product features a patented process by which the tablet, when placed under the tongue, begins to dissolve immediately upon contact.

12.    Defendant HVL is a distributor and retailer of nutritional supplements in the United States of America and Canada.

13.    In late 2001 and early 2002, Plaintiff Pharma Base and Defendant HVL negotiated the terms of a commercial relationship, ultimately entering into an Exclusive

Distributorship Agreement (the "Distribution Agreement") which, among other things, references an Ownership and Licensing of Trademark Agreement (the "Trademark Ownership and Licensing Agreement").

14.    Despite the language of the Trademark Ownership and Licensing Agreement, Defendant Hi-Vidomin filed on February 13, 2002 and on July 23, 2002 applications to register the marks COQMELT and QMELT, respectively, with the U.S. Patent and Trademark Office.

15.    On August 1, 2006, Defendant Hi-Vidomin assigned its ownership interest to the U.S. TM registrations for COQMELT and QMELT together with the goodwill of the business in connection with which the trademarks were used to Aspiration Trust.  *See*, Trademark Assignment, attached as Exhibit "A."

16.    Plaintiffs are the owners of all rights, title and interests in and to the trademarks COQMELT and QMELT in the United States, Canada, and other countries worldwide.  In addition to common law rights to these marks owned by Plaintiffs, Plaintiff Aspiration Trust holds title to United States Registration Nos. 2,733,259 and 2,803,702 for COQMELT and QMELT, respectively, for the benefit of Pharma Base in its business of supplying the Fast Melt Product.  The registration of the COQMELT mark issued July 1, 2003 for "dietary and nutritional supplements".  *See*, COQMELT Registration, attached as Exhibit "B".  The registration of the QMELT mark issued January 6, 2004 for "dietary and nutritional supplements".  *See*, QMELT Registration, attached as Exhibit "C."

17.    Under the Distribution Agreement, Defendant HVL was obliged to use certain efforts to market and sell the Fast Melt Product in the United States and Canada under Plaintiffs' COQMELT mark.

18.    On or about May 16, 2002, Defendants began using used Plaintiffs' COQMELT mark for the first time to market and/or sell the Fast Melt Product in the United States and Canada, and on information and belief, Defendants have continued to market and sell the Fast Melt Product in the United States in Canada under Plaintiffs' COQMELT mark.

19.    On or about December 4, 2002, Defendants began using Plaintiffs' QMELT mark for the first time to market and/or sell the Product in the United States and/or Canada, and on

information and belief, Defendant's have continued to market and sell the Fast Melt Product in the United States and Canada under Plaintiffs' QMELT mark.

20.    Due to a series of disputes that arose between Pharma Base and HVLthe Agreements with HVL, to the extent such Agreements existed, were terminated.

21.    Although it was initially demanded that Defendants cease and desist all use of the COQMELT and QMELT marks, it was subsequently agreed that Defendants could continue to use the marks limited solely to the sale of remaining inventory of the Fast Melt Product that was purchased from Pharma Base and in Defendants' possession, custody or control.

22.    Defendants continue to be obligated to use their best efforts to sell the remainder of the Fast Melt Product inventory in their possession, custody or control, and owe to Pharma Base duties of fidelity, good faith, and fair dealing created both expressly and impliedly by the Distribution Agreement.

23.    Plaintiffs have recently learned that Defendants have received an unknown quantity of a substitute CoEnzyme Q10 product (the "Chewable Lozenge Product") from an unknown supplier not affiliated with Plaintiffs, and that Defendants are actively marketing and distributing the Chewable Lozenge Product.

24.    In contrast to Plaintiffs' Fast Melt Product, the Chewable Lozenge Product is a cough-drop style lozenge that is chewed by the consumer as opposed to melting quickly as with the Fast Melt Product.

25.    Defendants have adopted the mark "COQLOZ" in selling the Chewable Lozenge Product.

26.    Defendants, through their fictitious trade name "Douglas Laboratories", have sold and are selling the Fast Melt Product under the name COQMELT side-by-side with the Chewable Lozenge Product under the name COQLOZ on the Douglas Laboratories website. See, July 23, 2007 Screen Shot of www.douglaslabs.com, attached as Exhibit "D".

27.    In addition to selling the Chewable Lozenge Product, which was not supplied by Plaintiffs and is not affiliated with Plaintiffs, under the COQLOZ mark, Defendants have

advertised and/or are causing to be advertised the Chewable Lozenge Product in a manner
creating the false impression that the Chewable Lozenge Product is affiliated with Plaintiffs.

28.    Defendants' Chewable Lozenge Product is being sold on a variety of websites in a
manner designed to confuse Defendants' Chewable Lozenge Product with Plaintiffs' Fast Melt
Product, at, upon information and belief, Defendants' direction, with Defendants' approval,
and/or with Defendants' acquiescence.

29.    For example, on information and belief, Defendants are selling and/or are causing
to be sold both the Fast Melt Product under the COQMELT mark and the Chewable Lozenge
Product under the COQLOZ mark side-by-side on a website with the domain name
www.tsangenterprise.com.  Under that website, clicking on the link for "COQLOZ" takes one to
a page in which only a picture of Plaintiffs' Fast Melt Product  is featured.  Moreover, although
the link purports to be for the Chewable Lozenge Product under the COQLOZ mark, the
description of the Chewable Lozenge Product in fact consists of text discussing almost
exclusively Plaintiffs' Fast Melt Product, and in fact makes repeated reference to the COQMELT
mark.  *See*, June 1, 2007 Screen Shot of www.tsangenterprise.com, attached as Exhibit "E".

30.    The only other reference to COQLOZ in the text of the www.tsangenterprise.com
website page, other than for the link enabling purchase of the Chewable Lozenge Product under
the COQLOZ mark, is the following false statement—"CoQmelt (*sic*) 300mg is now renamed
Coq-Loz (*sic*) with same ingredient and better taste."  *See*, Exhibit E.

31.    In another example, Defendants are selling and/or are causing to be sold both the
Fast Melt Product under the COQMELT mark and the Chewable Lozenge Product under the
COQLOZ mark side-by-side on a website with the domain name www.naturalgreens.com.
Under that website, clicking on the link for "COQLOZ" takes one to a page in which
Defendants' Chewable Lozenge Product is pictured under the COQLOZ mark. However,
although the link purports to be for the Chewable Lozenge Product, the description in fact
consists of text discussing almost exclusively Plaintiffs' Fast Melt Product, and makes repeated
reference to the COQMELT mark.  In fact, the title of the page selling Defendants' Chewable
Lozenge Product is, "Product Detail: CoQ-loz 300 mg (CoQMelt), Douglas Labs".  *See*, May
25, 2007 Screen Shot of www.naturalgreens.com, attached as Exhibit "F".

32.     In yet another example, Defendants are selling and/or are causing to be sold both the Fast Melt Product under the COQMELT mark and the Chewable Lozenge Product under the COQLOZ mark side-by-side on a website with the domain name www.betterlife.com.  Under that website, Defendants' "COQLOZ" Product is being sold under the following title— "CoQLOZ 300 MG (CoQmelt 300)".  *See*, June 1, 2007 Screen Shot of www.betterlife.com, attached as Exhibit "G".

## COUNT I
## (TRADEMARK INFRINGEMENT)

33.     Plaintiffs repeat and re-allege each of the preceding paragraphs in this Complaint.

34.     Plaintiffs' COQMELT and QMELT marks are inherently distinctive.

35.     To the extent not inherently distinctive, Plaintiffs' COQMELT and QMELT marks have acquired secondary meaning and significance in the minds of the consuming public for Coenzyme Q10 dietary supplements.

36.     All public recognition and goodwill associated with Defendants' use of Plaintiffs' COQMELT and QMELT marks either inured to the benefit of or has been assigned to Plaintiffs.

37.     The trademarks COQMELT and QMELT have been used continuously since their adoption to identify the Plaintiffs' Fast Melt Product and to distinguish that product from the products offered by others.

38.     After adoption and use of the COQMELT and QMELT marks in connection with the sale of Coenzyme Q10 dietary supplements, Defendants have sold and continue to offer to sell the Chewable Lozenge Product, a substitute Coenzyme Q10 dietary supplement, under the COQLOZ mark, as evidenced in Exhibits D, E, F and G, and on information and belief.

39.     Defendants' Chewable Lozenge Product and Plaintiffs' Fast Melt Product are closely related products.

40.    On information and belief, Defendants' sale of the Chewable Lozenge Product under the COQLOZ mark is intended to exploit the reputation and goodwill cultivated by Plaintiffs in the COQMELT and QMELT marks.

41.    On information and belief, the COQLOZ mark that Defendants have used and continue to use is confusingly similar with Plaintiffs' COQMELT and QMELT marks.

42.    Defendants' activities are believed to have caused, and are likely to cause, confusion, mistake, or deception, thereby causing great harm to the goodwill and public recognition cultivated in the COQMELT and QMELT marks by Plaintiffs and have diminished the value of the COQMELT and QMELT marks.

43.    Plaintiff has not given its consent, directly or indirectly, to Defendants to use marks similar to the COQMELT and QMELT marks.

44.    Defendants, and each of them, have infringed Plaintiffs' marks in interstate commerce and in this District by various acts, including marketing, offering for sale and selling Coenzyme Q10 dietary supplements under the name COQLOZ. The unauthorized use of the confusingly similar name COQLOZ by Defendants constitutes a violation of the Lanham Act, 15 U.S.C. § 1051 et seq., as amended, to the substantial and irreparable injury of the public and of Plaintiffs' trademarks, business reputation and goodwill.

45.    Plaintiffs have no adequate remedy at law. Defendants' foregoing conduct has caused and will continue to cause, if not enjoined, irreparable damage to Plaintiffs' rights in its COQMELT and QMELT marks and in Plaintiffs' business, reputation and goodwill.

46.    Plaintiffs' damages from Defendants' unauthorized and unlawful activities, to the extent ascertainable, have not yet been determined.

## COUNT II
### (FALSE ADVERTISING IN VIOLATION OF § 43(a) OF THE LANHAM ACT— FALSE AND/OR MISLEADING DESCRIPTION)

47.    Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs of this complaint as though the same were fully set forth herein.

48.     Plaintiffs' Fast Melt Product is of superior quality and is more desirable to consumers than Defendants' Chewable Lozenge Product, because, among other reasons, the Fast Melt Product quickly dissolves in a consumer's mouth while the Defendants' Chewable Lozenge Product is more similar to a chewable cough drop, and requires a great deal more time to dissolve.

49.     Despite, or perhaps because of, the obvious advantages of Plaintiffs' Fast Melt Product over Defendants' Chewable Lozenge Product, Defendants have falsely stated, and continue to falsely state, in their marketing, advertising, and other public declarations, or have caused and continue to falsely cause others to state, in their marketing, advertising, and other public declarations, that their Chewable Lozenge Product is identical to, has the same qualities as, and/or provides the same benefits as Plaintiffs' Fast Melt Product.

50.     These actions of the Defendants are likely to confuse, mislead, and deceive members of the public as to the quality and nature of the Defendants' and/or Plaintiffs' products and services in violation of 15 U.S.C. § 1125(a).

51.     In the alternative, on information and belief, Defendants had knowledge of the falsity and/or misleading nature of their representations of fact regarding their products, in that they knew, among other things, of the qualities and advantages of Plaintiffs' Fast Melt Product before Defendants' false descriptions were made.

52.     Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiffs in their marks and their business, reputation, and goodwill.  Plaintiffs' damages from the aforesaid unlawful actions of the Defendants, to the extent ascertainable, have not yet been determined.

## COUNT III
### (FALSE ADVERTISING IN VIOLATION OF § 43(a) OF THE LANHAM ACT— FALSE CLAIM OF SPONSORSHIP AND/OR APPROVAL)

53.     Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs of this complaint as though the same were fully set forth herein.

54.    By falsely stating, and continuing to falsely state, in their marketing, advertising, and other public declarations that their Chewable Lozenge Product was "formerly" Plaintiffs' Fast Melt Product sold under the mark COQMELT, Defendants falsely imply that the Chewable Lozenge Product is a "next generation" product offered by Plaintiffs, and have otherwise misrepresented the Chewable Lozenge Product as being sponsored by, approved by, or associated with Plaintiffs.

55.    These actions of the Defendants are likely to confuse, mislead, and deceive members of the public as to the sponsorship, approval, or association of Defendants' products and services by Plaintiffs, in violation of 15 U.S.C. § 1125(a).

56.    In the alternative, on information and belief, Defendants had knowledge of the falsity and/or misleading nature of their representations of fact regarding their products, in that they knew, among other things, that Plaintiffs do not sponsor or approve, and are not associated with Defendants' Chewable Lozenge Product before Defendants' false descriptions were made.

57.    Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiffs in their marks and their business, reputation, and goodwill.  Plaintiffs' damages from the aforesaid unlawful actions of the Defendants, to the extent ascertainable, have not yet been determined.

## COUNT IV
## (FEDERAL UNFAIR COMPETITION IN VIOLATION OF
## § 43(a) OF THE LANHAM ACT—PASSING OFF)

58.    Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs of this complaint as though the same were fully set forth herein.

59.    Plaintiffs' Fast Melt Product is separate and distinct from Defendants' Chewable Lozenge Product.

60.    Plaintiffs do not develop, design, manufacture, distribute or market, and are not otherwise involved with Defendants' Chewable Lozenge Product.

61.    Nonetheless, Defendants have advertised and marketed their Chewable Lozenge Product or have caused the advertisement and marketing of their Chewable Lozenge Product in

such a fashion that they have failed to distinguish their Chewable Lozenge Product from the products and services offered by Plaintiffs.

62.    In fact, Defendants have actively created the impression that their Chewable Lozenge Product and COQLOZ mark are the same as Plaintiffs' products and are otherwise offered by Plaintiffs.

63.    These actions of the Defendants are likely to confuse, mislead, and deceive members of the public into believing that Defendants' products and services are offered by Plaintiffs, in violation of 15 U.S.C. § 1125(a).

64.    In the alternative, on information and belief, Defendants had knowledge that they were passing off of their Chewable Lozenge Product as being offered by Plaintiffs, in that Defendants knew, among other things, that Plaintiffs do not develop, design, manufacture, distribute, or market, and are not otherwise involved with Defendants' Chewable Lozenge Product before Defendants engaged in such passing off.

65.    Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiffs in their marks and their business, reputation, and goodwill.  Plaintiffs' damages from the aforesaid unlawful actions of the Defendants, to the extent ascertainable, have not yet been determined.

## COUNT V
### (UNFAIR COMPETITION IN VIOLATION OF PENNSYLVANIA COMMON LAW)

66.    Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs of this complaint as though the same were fully set forth herein.

67.    Plaintiffs' Fast Melt Product is separate and distinct from Defendants' Chewable Lozenge Product.

68.    Plaintiffs do not develop, design, manufacture, distribute or market, and are not otherwise involved with Defendants' Chewable Lozenge Product.

69.    Nonetheless, Defendants have advertised and marketed their Chewable Lozenge Product or have caused the advertisement and marketing of their Chewable Lozenge Product in such a fashion that they have failed to distinguish their Chewable Lozenge Product from the products and services offered by Plaintiffs.

70.    In fact, Defendants have actively created the impression that their Chewable Lozenge Product and COQLOZ mark are the same as Plaintiffs' products and are otherwise offered by Plaintiffs.

71.    These actions of the Defendants are likely to confuse, mislead, and deceive members of the public into believing that Defendants' products and services are offered by Plaintiffs, in violation the laws of the Commonwealth of Pennsylvania.

72.    In the alternative, on information and belief, Defendants had knowledge that they were passing off their Chewable Lozenge Product as being offered by Plaintiffs, in that Defendants knew, among other things, that Plaintiffs do not develop, design, manufacture, distribute, or market and are not otherwise involved with Defendants' Chewable Lozenge Product before Defendants engaged in such passing off.

73.    Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiffs in their marks and their business, reputation, and goodwill.  Plaintiffs' damages from the aforesaid unlawful actions of the Defendants, to the extent ascertainable, have not yet been determined.

## COUNT VI
### (UNJUST ENRICHMENT)

74.    Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs of this complaint as though the same were fully set forth herein.

75.    Benefits have been conferred upon Defendants by Defendants' unauthorized use of Plaintiffs' marks.  Defendants have accepted and retained these benefits.  It is inequitable for Defendants to retain such benefits without compensating Plaintiffs.  Defendants have been unjustly enriched at the expense of Plaintiffs.

76.    Defendants' actions constitute unjust enrichment under the common law of the Commonwealth of Pennsylvania.

**WHEREFORE**, Plaintiffs request:

(a)    That the Court find Defendants have infringed Plaintiffs' COQMELT and QMELT trademarks;

(b)    That the Court find there is a substantial likelihood that Defendants will continue infringing Plaintiffs' COQMELT and QMELT trademarks unless enjoined from doing so;

(c)    That the Court preliminarily enjoin Defendants, their officers, directors, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, or under them, or either of them, from infringing Plaintiffs' COQMELT and QMELT trademarks, in any manner, or participating or assisting in any such activity;

(d)    That the Court permanently enjoin Defendants, their officers, directors, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, or under them, or either of them, from infringing Plaintiffs' COQMELT and QMELT trademarks, in any manner, or participating or assisting in any such activity;

(e)    That the Court award Plaintiffs damages incurred as a result of Defendants' trademark infringement in an amount to be determined at trial, and that such damages be trebled;

(f)    That the Court award Plaintiffs their attorneys' fees, costs and expenses incurred in prosecuting this action;

(g)    That the Court require Defendants to recall and deliver to Plaintiffs for destruction, at Defendants' expense, all literature, brochures, quotes, packaging, labels, pamphlets, catalogs, website advertising and any other material bearing the COQLOZ trademarks, or any confusingly similar mark(s) thereto, and ensure that any and all third party vendors displaying such material cease and desist from doing so;

(h)    That the Court require Defendants to recall and deliver to Plaintiffs for destruction, at Defendants' expense, all literature, brochures, quotes, packaging, labels,

pamphlets, catalogs, website advertising and any other material bearing the COQMELT or QMELT trademarks, or any confusingly similar mark(s) thereto, used by Defendants to sell their Chewable Lozenge Product, and ensure that any and all third party vendors displaying such material cease and desist from doing so; and

(i)    That the Court require Defendants to file with the Court, and to serve on Plaintiffs, within thirty (30) days after entry of an Order as herein prayed, a written report, under oath, setting forth in detail the manner in which Defendants have complied with such Order.

Respectfully submitted,

Date: July 23, 2007

Patricia Smink Rogowski
Del. Bar ID No. 2632
CONNOLLY BOVE LODGE & HUTZ LLP
P.O. Box 2207
1007 N. Orange Street
Wilmington, DE  19899
Tel:    (302) 658-9141
Fax:    (302) 658-5614
progowski@cblh.com
*Attorneys for Plaintiffs Pharma Base S.A. and
Aspiration Trust Reg.*

Of Counsel
WOODCOCK WASHBURN LLP
John P. Donohue, Jr., Esq.
Chad A. Rutkowski, Esq.
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA  19104-2891
Tel:    (215) 568-3100
Fax:    (215) 568-3439

# Exhibit A

## TRADEMARK ASSIGNMENT

WHEREAS, Hi-Vidomin Laboratories, Inc., a Delaware corporation, (hereinafter referred to as "ASSIGNOR"), having an office at 600 Boyce Road, Pittsburgh, Pennsylvania 15205 is the owner of the U.S. Trademarks COQMELT (Registration Number 2,733,259) and QMELT (Registration Number 2,803,702), together with the goodwill of the business symbolized thereby (hereinafter referred to as "TRADEMARKS"); and

WHEREAS, Aspiration Trust Reg., a Liechtenstein corporation, having an office at Bannholz Strasse 16, P.O. Box 381, FL 9490 Vaduz, Liechtenstein, (hereinafter referred to as "ASSIGNEE") is desirous of acquiring ownership of the TRADEMARKS.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency thereof which is hereby acknowledged, ASSIGNOR does hereby assign, transfer and set over to ASSIGNEE its ownership interest in and to the TRADEMARKS in the United States, together with the goodwill of the business in connection with which the TRADEMARKS are used.

Signed in the name of Hi-Vidomin Laboratories, Inc. by its duly authorized representative on this _____ day of August, 2006.

HI-VIDOMIN LABORATORIES, INC.

By _____

Name _L. Douglas Lioon_____

Title _CEO_____

### ACKNOWLEDGEMENT

PROVINCE OF QUEBEC          )
                           )
CANADA                      )

On this day, I hereby certify that Mr. L. Douglas Lioon signed on the foregoing Trademark Assignment as duly authorized representative of Hi-Vidomin Laboratories, Inc., and acknowledged that said instrument is the duly authorized act and deed of said corporation and that the facts stated therein are true.

Given under my hand and seal this _1st_ day of _August_, 2006.

_____
Commissioner for Oaths

MARIO PARADIS
# 146306

My commission expires: _Oct. 25, 2008_

1

# Exhibit B

Trademark Electronic Search System (TESS)                    http://tess2.uspto.gov/bin/showfield?f=doc&state=4ibtrh.2.2



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Fri Jun 1 04:06:18 EDT 2007*



Logout | Please logout when you are done to release system resources allocated for you.

Start | List At: [          ] OR Jump | to record: [          ]  **Record 2 out of 2**

TARR Status | ASSIGN Status | TDR | TTAB Status | ( Use the "Back" button of the Internet Browser to return to TESS)

## Typed Drawing

| | |
|---|---|
| **Word Mark** | COQMELT |
| **Goods and Services** | (ABANDONED) IC 005. US 006 018 044 046 051 052. G & S: Pharmaceutical preparations for use as nutritional supplements. FIRST USE: 20020313. FIRST USE IN COMMERCE: 20020313 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Design Search Code** | |
| **Serial Number** | 76373163 |
| **Filing Date** | February 21, 2002 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Owner** | (APPLICANT) Aspiration Trust reg. CORPORATION LIECHTENSTEIN Pflugstrasse 22 FL- 9490 Vaduz LIECHTENSTEIN |
| **Attorney of Record** | James A. Oliff |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | DEAD |
| **Abandonment Date** | February 20, 2004 |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST
FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

# Exhibit C

Trademark Electronic Search System (TESS)                      http://tess2.uspto.gov/bin/showfield?f=doc&state=4ibtrh.2.1



**United States Patent and Trademark Office**

Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

## Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Fri Jun 1 04:06:18 EDT 2007*



**Record 1 out of 2**

( *Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | QMELT |
| **Goods and Services** | IC 005. US 006 018 044 046 051 052. G & S: Nutritional and dietary supplements. FIRST USE: 20021204. FIRST USE IN COMMERCE: 20021204 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Design Search Code** | |
| **Serial Number** | 78146419 |
| **Filing Date** | July 23, 2002 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | February 11, 2003 |
| **Registration Number** | 2803702 |
| **Registration Date** | January 6, 2004 |
| **Owner** | (REGISTRANT) Hi-Vidomin Laboratories, Inc. CORPORATION DELAWARE 600 Boyce Road Pittsburgh Pennsylvania 15205 |
| | (LAST LISTED OWNER) ASPIRATION TRUST REG. CORPORATION LIECHTENSTEIN BANNHOLZ STRASSE 16, P.O. BOX 381, FL 9490 VADUZ LIECHTENSTEIN |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Robert P. Lenart |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

Trademark Electronic Search System (TESS)

http://tess2.uspto.gov/bin/showfield?f=doc&state=4ibtrh.2.1

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST
FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

6/1/2007 4:11 PM

# Exhibit D

Douglas Labs                                            http://douglaslabs.com/product_listing.cfm?browse=cat&catname=CO...



**Douglas Laboratories**
*Raising the Standard for Nutrition and Wellness*

*I'm glad my health professional knows best*℠

**Home | About Us | Products | Tradeshows | Research | FAQ's | Careers | Help**

---

**Healthcare Professional Login**

username : [        ]
password : [        ]
[ SUBMIT ]

**Forgot password?**
**Request password**

**Patient Login**

username : [        ]
password : [        ]
[ SUBMIT ]

**Forgot password?**
**Request password**

**Search Site**

[              ] [ GO ]

**Products**

**Douglas Capabilities**

**Quality Assurance**

**Worldwide Locations**

**Contact Us**

**Products**
> **Browse by Category**
> **Category: Co-Q-10 Formulas**
> **Subcategory: Coenzyme Q10 Formulas**

| | |
|---|---|
| COENZYME Q-10 50MG W/VIT C | 100 |
| COENZYME Q-10 60MG W/LIPOIC | 30 , 60 |
| COENZYME Q-10 ULTRA 200MG | 30 , 60 , |
| *CHEWABLE/EMULSIFIED* | 90 |
| COENZYME Q-10, 25 MG W/TAURINE | 60 |
| COENZYME Q10 (100 MG) S-GEL | 30 |
| COQ-LOZ 300MG | 60 |
| COQMELT 100MG BLISTER PK 28'S | 28 |
| COQMELT® 60 MG | 60 |

**Browse by:**

Categories
Health Function
Ingredients
Alphabetical Order
DL Formula Number
Premier Products
New Products

---

Copyright © Douglas Laboratories, 2007
Disclaimer

**Douglas Laboratories**
600 Boyce Road
Pittsburgh, PA 15205, U.S.A.
412/494-0122
412/494-0155 (Fax)
Toll-free 1-800-245-4440
Or       1-888-DOUGLAB
         (1-888-368-4522)

# Exhibit E

**Home**

**View Shopping Cart**

**Index**

**Catalog**

**Free Newsletter**

**Women's Health**

**Men's Health**

**Vitamin**

**Mineral**

**Supplement**

**Herb**

**Diet / Weight**

**Tea**

**Guarantee**

**Order Info**

**Shipping Info**

**Return Info**

**Health Solutions**

**Disclaimer**

 

## Tsang Nutrition

### Home of Natural Remedies & Nutritional Information



**CoQmelt (CoEnzyme Q10) - The patented fastest Absorbing CoQ10 formulation**

CoQmelt 300mg is now renamed Coq-Loz 300mg with same ingredient and better taste

**Dosage** 100 mg **Size:** 28 tablets pack

**Dosage** 300 mg **Size:** 60 tablets bottle

### Ingredient

Each Fast Melt tasty tablet Contains:

Coenzyme Q10 100 mg or 300mg.

100mg Tablet Split in half easily.

### Direction

Adults take 1 fast-melt tablet daily or as directed by physician.

High dose (1200 mg a day) is used in parkinson's disease or for boosting Immune System Function. Please read **Newsletter #68** --- CoQ10 - A wonderful Essential Nutrient.

### About CoQmelt

CoQmelt is a breakthrough formulation of coenzyme Q10 in a 100 mg or 300mg fast-melt tablet. Using patented technology, not available in any other CoQ10 product, CoQmelt has been shown to be the fastest absorbing CoQ10 formula ever. In a completed clinical trial, various delivery forms of CoQ10 were

CoQmelt, Coq-Loz (Coenzyme Q10, CoQ10) - The patented fastest Abs...                    http://tsangenterprise.com/coq10.htm





studied for their absorptive kinetics in male subjects. CoQmelt's fast-melting tablet was compared with powder-filled hard-shell capsules, and two different soft gelatin capsules in a single dose, crossover study. Overall, CoQmelt was shown to reach a peak plasma level almost 3 times as fast as hard and soft gelatin formulations. CoQmelt's patented technology and formulation allows for the creation of a mouth-soluble tablet. The process allows for the incorporation of a lipid soluble compound (in this case, CoQ10) into a water soluble matrix. A porous tablet can then be created that will begin dissolving on contact with saliva, thereby releasing the active ingredient in a suspension that is swallowed. The result, (extremely rapid absorption), allows CoQ10 to get into the blood significantly faster than other delivery forms. Each fast-melt tablet provides 100 mg or 300mg of naturally-fermented coenzyme Q10 in a delicious tasting vegetarian and sugar-free formula.

CoEnzyme Q10 or Coq10 or ubiquinion promotes Cellular Energy Production & Cardiovascular Health. CoEnzyme Q10 is an essential component of the mitochondria - the energy producing unit of the cells in our body. Coenzyme It is vital in the manufacture of ATP which is a primary energy source in the body. It is a vitamin-like substance whose actions in the body resemble those of Vitamin E. It aids in circulation, stimulates the immune system, increases tissue oxygenation, and has vital anti-aging effects. Deficiencies of Coenzyme Q10 have been linked to diabetes, periodontal disease, and muscular dystrophy. It is beneficial for people who suffer from heart failure, asthma, allergies, respiratory disease. It is also very useful in treating obesity, candidiasis, multiple sclerosis and diabetes. Coenzyme Q10 is also demonstrating potent anti-cancer properties for cancer treatment as shown in the studies described below.

Warning:

Not recommended if you're pregnant or nursing. Keep out of reach of children.

Clinical Studies

Several double-blind studies have found that **CoQ10 supplements can markedly improve symptoms and objective measurements of heart function** when they are taken along with conventional medication. In the largest of these studies, 641 individuals with moderate to severe congestive heart failure were monitored for 1 year. given 2 mg per kilogram body weight of CoQ10 daily, the rest were given placebo. Standard therapy was continued in both groups. The participants treated with CoQ10 experienced a significant reduction in the severity of their symptoms. No such

improvement was seen in the placebo group. The people who took CoQ10 also had significantly fewer hospitalizations for heart failure. An 8-week double-blind placebo-controlled study of 59 men already taking medications for high blood pressure found that 120 mg daily of CoQ10 could reduce blood pressure by about 9% as compared to placebo.7 Similarly positive results were also seen in smaller studies involving a total of over 250 participants.2,3. Cardiomyopathy is the general name given to conditions in which the heart muscle gradually becomes diseased. Several small studies suggest that CoQ10 supplements are helpful for some forms of cardiomyopathy.4,5,6

**Coenzyme Q10 is also demonstrating potent anti-cancer properties.** (Ref 8-16) In the early 1970s, Dr. Karl Folkers began testing CoQ10 as a supplement for cancer patients and documented unexpectedly longer survival with CoQ10 use. CoQ10 has been found to protect against chemotherapy induced cardiac toxicity, specifically from Adriamycin, which known to cause heart damage. Studies have shown that cancer patients who take 90mg of CoQ10 per day may experience a reduction in pain and weight loss, increased appetite, and decrease of metastases. However, when doses are increased to 300-390mg daily, studies have reported partial and total tumor remission. In several studies, CoQ10 worked wonders with patients who had chosen to take chemotherapy, reducing the toxicity of such treatment. In one study, patients who were given CoQ10 had little or no toxicity, even though they were given much larger doses of the toxic chemotherapy agent than were given to the control group. But now a new series of studies are turning up some even more exciting news. CoQ10 may be able to halt cancer. Dr. William Campbell Douglass reports research findings and case histories in his newsletter Second Opinion that show a correlation between CoQ10 and breast cancer. Low levels of CoQ10 were found in women with breast cancer. Increased levels were associated with regression and remission. Among the studies, Dr. Karl Folkers of the University of Texas, Austin reports regression of breast cancer, not only at the original site, but even of cancer that had spread (metastasized) to the liver.

References

1. Morisco C, Trimarco B, Condorelli M, et al. Effect of coenzyme Q10 therapy in patients with congestive heart failure: a long-term multicenter randomized study. Clin Investig. 1993;71(suppl):S134-S136.

2. Hashiba K, Kuramoto K, Ishimi Z, et al. Heart. 1972;4:1579-1589. Cited by: Werbach MR. Nutritional Influences on Illness [book on CD-ROM]. Tarzana, Calif: Third Line Press; 1998.

3. Hofman-Bang C, Rehnquist N, Swedberg K, et al. Coenzyme Q10 as an adjunctive treatment of congestive heart failure. J Am Coll Cardiol.

1992;19:216A.

4. Langsjoen H, Langsjoen P, Langsjoen P, et al. Usefulness of coenzyme Q10 in clinical cardiology: a long-term study. Mol Aspects Med. 1994;15(suppl):S165-S175.

5. Langsjoen PH, Vadhanavikit S, Folkers K. Response of patients in classes III and IV of cardiomyopathy to therapy in a blind and crossover trial with coenzyme Q10. Proc Natl Acad Sci U S A. 1985;82:4240-4244.

6. Pogessi L, Galanti G, Comeglio M, et al. Effect of coenzyme Q10 on left ventricular function in patients with dilative cardiomyopathy. Curr Ther Res. 1991;49:878-886.

7. Singh RB, Niaz MA, Rastogi SS, et al. Effect of hydrosoluble coenzyme Q10 on blood pressures and insulin resistance in hypertensive patients with coronary artery disease. J Human Hypertens. 1999;13:203-208.

8. Folkers K. The potential of coenzyme Q 10 (NSC-140865) in cancer treatment. Cancer Chemotherapy Reports - Part. 1974;4:19-22.

9. Folkers K, Brown R, Hanioka T, Williams M, Quillin P, Iafelice R. Unpublished study cited by Folkers K. in Relevance of the biosynthesis of coenzyme Q10 and of the four bases of DNA as a rationale for the molecular causes of cancer and a therapy. Biochemical and Biophysical Research Communications. 1996;224:358-361.

10. Iarussi D, Auricchio U, Agretto A, et al. Protective effect of coenzyme Q10 on anthracyclines cardiotoxicity: control study in children with acute lymphoblastic leukemia and non-Hodgkin lymphoma. Molecular Aspects of Medicine. 1994:15 Suppl:s207-12.

11. Lockwood K, Moesgaard S, Hanioka T, Folkers K. Apparent partial remission of breast cancer in 'high risk' patients supplemented with nutritional antioxidants, essential fatty acids and coenzyme Q10. Molecular Aspects of Medicine . 1994;15:S231-40.

12. Folkers K, Brown R, Judy WV, Morita M. Survival of cancer patients on therapy with coenzyme Q10. Biochemical & Biophysical Research Communications. 1993;192:241-5.

13. Lockwood K, Moesgaard S, Folkers K. Partial and complete regression of breast cancer in patients in relation to dosage of coenzyme Q10. Biochemical & Biophysical Research Communications. 1994;199:1504-8.

14. Lockwood K, Moesgaard S, Yamamoto T, Folkers K. Progress on therapy of breast cancer with vitamin Q10 and the regression of metastases. Biochemical & Biophysical Research Communications. 1995;212:172-7.

Folkers K. Relevance of the biosynthesis of coenzyme Q10 and of the four bases of DNA as a rationale for the molecular causes of cancer and a therapy. Biochemical & Biophysical Research Communications. 1996;224:358-61.

Scaglione F, Lundstrom B, Barbieri B, Lund B. Coenzyme Q10 as an immuno-enhancer: A single blind placebo-controlled and randomized clinical study. Presented to the First Conference of the International Coenzyme Q10 Association: May 21-24, 1998; Boston, MA.

## Place your order

**CoQmelt** 100 mg 28 tablet $32 **Add To Cart**

Coq-Loz (CoQmelt) 300 mg 60 tablet $160 **Add To Cart**

**New customer! Quick register for registered-customer price**

**Repeat Customer ! Log-in to order for best price**

(Forget your user ID and PW? Just click **here** to retrieve)

**Order Form**



**Order Info**          **Shipping Info**

**International Customer:** Please read our order and shipping Info before placing your order!

### Disclaimer

This is a statement of nutritional support. This statement has not been evaluated by the FDA. This product is not intended to medically diagnose, treat, cure, or prevent any disease. Always consult your health care provider before using any supplement.

**E-mail Us**

**Top of Page**

# Exhibit F

CoQ-loz 300 mg (CoQMelt), Douglas Labs - NaturalGreens

Page 1 of 3



MY ACCOUNT | HELP | SHOPPING BAG | LOG-IN

Friday 5/25/2007 - US EST

# Naturalgreens.com
Overall the Choice Your Choose Living™

*TRUSTED SINCE 2001*

| HOME | ABOUT US | CONTACT US | ORDER STATUS | PRODUCT SEARCH | MY LIST |

  Your WIST US

by Type:

by Brand:

▶ VIEW ALL PRODUCTS BY DOUGLAS LABS

## Product Detail: CoQ-loz 300 mg (CoQMelt), Douglas Labs



### Natural Orange Flavored Coenzyme Q10 300 mg

CoQmelt® is a breakthrough formulation of coenzyme Q10 in a 300 mg fast-melt tablet. Using patented technology, not available in any other CoQ10 product, CoQmelt has been shown to be rapidly absorbed into the bloodstream. In a recently completed clinical trial, various delivery forms of CoQ10 were studied for their absorptive kinetics in male subjects. CoQmelt's fast-melting tablet was compared with a powder-filled hard-shell capsule, and two different soft gelatin capsules in a single dose, crossover study. Overall, CoQmelt was shown to reach a peak plasma level over 3 times faster than some powder-filled hard-shell capsules and over 2 times faster than some soft gelatin formulations.

CoQmelt's patented technology and formulation allows for the creation of a mouth-soluble tablet. The process allows for the incorporation of a lipid soluble compound (in this case, CoQ10) into a water soluble matrix. A porous tablet can then be created that will begin dissolving on contact with saliva, thereby releasing the active ingredient in a suspension that is swallowed. The result, (extremely rapic absorption), allows CoQ10 to get into the blood significantly faster than other delivery forms. Each fast-melt tablet provides 300 mg. of naturally-fermented coenzyme Q10 in a delicious tasting vegetarian and sugar-free formula. *Tasting is believing.*

**CoQ10 supports a healthy heart and energy production**
Numerous studies have shown that maintaining sufficient levels of CoQ10 can positively support:

- Cardiovascular/circulatory health
- Those taking lipid lowering medications
- Heart health
- Energy production
- Antioxidant defense

**DESCRIPTION:**
CoQmelt®, provided by Douglas Laboratories®, supplies 300 mg of coenzyme Q10 in a natural orange flavored, fast-melting tablet. CoQmelt's patented

Page 2 of 3

CoQ-loz 300 mg (CoQMelt), Douglas Labs - NaturalGreens

delivery system a tablet that melts on the tongue vitrually in seconds has been shown to enable CoQ10 to be rapidly absorbed into the bloodstream. Best of all, CoQmelt contains no sugar, artificial colors or flavors anc is suitable for vegetarians.

**FUNCTIONS:**
Coenzyme C10 (or ubiquinone) is an important rate-limiting nutrient that is a cofactor in the mitochondrial electron transport chain, the biochemical pathway in cellular respiration from which adenosine triphosphate (ATP) and metabolic energy is derived. Since nearly all cellular activities are dependent upon energy, coenzyme Q10 is essential for the health of all human tissues and organs. Coenzyme Q10 is a naturally-occurring antioxidant nutrient which retards free radical formation in biological systems. Coenzyme Q10 resembles vitamin E and vitamin K in chemical structure. Biochemically, it functions much like vitamin E in that it participates in antioxidant and 'ree radical reactions. Healthy humans who consume a well-balanced diet have the ability to synthesize coenzyme Q10. Unhealthy individuals and those on an inadequate diet may not synthesize coenzyme Q10 in sufficient quantity.

According to Dr. Karl Folkers and other experts, humans can biosynthesize coenzyme Q10 from tyrosine or phenylalanine and mevalonic acid, which are small molecules abundant in the body. This is a complex biochemical process that requires 15 separate steps and many enzymes, coenzymes, vitamins and minerals. Only by such a process can the respiratory chain receive proper levels of coenzyme Q10. Thus, the biosynthesis of coenzyme Q10 in the human body requires a good diet one that is high invitamins, minerals, and other nutrient factors. It has been shown by the NHANES studies that many Americans do not have an adequate diet. Rather, their intake of most water soluble vitamins, vitamin A and some minerals and trace elements is insufficient. Many of these nutrients are essential for the biosynthesis of coenzyme Q10. In addition, it has been shown that in disease states, nutrients from food sources may not necessarily be absorbed or available.

According to some experts, coenzyme Q'0 should be considered an essential nutrient, as it is well established that coenzyme Q10 is essential for the health of every cell in the human body.Numerous studies indicate coenzyme Q10 also plays an important role in the maintenance of the entire cardiovascular system. Supplementation with coenzyme Q10 in patients has shown to be useful for the maintenance of healthy blood pressure. Coenzyme Q10 is also important for the maintenance of blood vessels anc heart muscle function. In addition, people taking statin drugs can develop deficiencies in coenzyme Q10 and may require supplementation.

**SUGGESTED USE:**
Adults take 1 tablet daily with meals or as directed dy physician.

[This product belongs to the following category]
- CoQ10

| **Supplement Facts** | | |
|---|---|---|
| Container Size 60 Tabs | | |
| Serving Size 1 Tab | | |
| | Content | %DV |
| Amount Per 1 Tab | | |
| Natural Coenzyme Q10 | 300 mg | * |
| % Daily Values (DV) are based on a 2,000 calorie diet. | | |
| * Daily Value (DV) not established. | | |

CoQ-loz 300 mg (CoQMelt), Douglas Labs - NaturalGreens

**CoQ-loz 300 mg (CoQMelt), Douglas Labs**
( Manufacturer's Sku #: 99129-60X )

Size: 60 Tabs
Suggested Retail Price: $160.00
Price: $160.00 (Special-Price available)

Order Quantity: 1

**© ADD to CART**

- Receive Free Shipping on orders over $45; all others are shipped for a flat rate of $5.
- Receive Volume Discount and Free Shipping on orders over $85   (more about our price structure).

- The statements provided are for information use only and is not intended to substitute advice from your physician or health care provider. Always follow the manufacturer's recommended dosage or suggested use.  If you have any special medical condition including pregnancy or nursing, consult your physician.

**Douglas Laboratories®**

HOME | SHIPPING INFO | USER AGREEMENT | PRIVACY | SECURITY | SITE MAP

http://www.naturalgreens.com/ProdDetail.asp/ProdID/274__CoQloz_300mg

5/25/2007

# Exhibit G

Product Search Results Page

https://www.betterlife.com/prod_list.asp?mode=s&q=CoQmelt-300



betterlife.com

view cart/checkout

Free shipping on orders over $75   Secure shopping

Welcome    Shop by Brand    Shop by Category    Education    Contacting Us

welcome to betterlife.com • offering the best in natural supplements

Welcome                                                    **Browse**   Acidophilus

## Products matching CoQmelt 300

| Item # | Product Description | Size | Regular Price | Our Price |
|---|---|---|---|---|
| Douglas Labs | | | | |
| DLB99129 | *CoQLOZ 300 MG (CoQmelt 300)* | 60 LOZENGES | ~~$160.00~~ | $160.00 |

**Search For**

**Featured Brands**

\*
\*\*
AbsorbAid (Nature's Sources)
Action Labs
Advanced Research
NCI (Dr. Hans Nieper)
Age Advantage -
Youthful Technologies
Ageless Foundation
Ayurceutics
Bach Flower Remedies
Beverly International
Bio-Nutritional/Nutrex
Blue Sky Herbal
Borlind (Annemarie Borlind)
CarTCell
Cartilade
Cytosport Inc.
Derma E Skin Care
Douglas Labs
Dr. Clark Purity Products
Dr. Rath
Enzymatic Therapy
Esteem
EuroPharma
Flora (Flor Essence)
Garden of Life

VERIFIED: 01-JUN
VERIFIED SECURE
CONTROLSCAN.COM

6/1/2007 1:51 PM

1 of 4

6/1/2007 1:51 PM

Product Search Results Page

Gerovital (GH3)
Green Foods
Green Kamut
Hair No More
Health From The Sun
HerbaSway
Hero Nutritionals
Hyalogic (Synthovial 7)
Innovative Natural Products
Jarrow
Jason Natural Cosmetics
Jason Winters
KAL
Kyolic / Wakunaga
Laci Le Beau
Lane Labs (Benefin)
Lavilin
Lewis Labs
Life Extension
Life-Flo
Liverite
Longevity Sciences
Maitake Mushroom (Grifron)
Manapol (Carrington Labs)
Mayumi
Squalene/Japan Health Products
MegaHydrin
Mcducare
Mcntana Naturals
MRM
Natren
Natural Bladder
Natural Care
Natural Factors
Naturally

Product Search Results Page

https://www.betterlife.com/prod_list.asp?mode=s&q=CoQmelt+300

Vitamins/Wobenzym
Nature's Answer
Nature's Life
Nature's Plus
Nature's Way
New Chapter
North American Herb
& Spice
NOW
Nutrition Now
O'Donnell Formulas,
Inc.
Ola Loa Products
PhosChol (NutraSal)
Planetary Herbals
Rachel Perry
Rainbow Light
Reviva
Scandinavian
Formulas
Schiff
Shen Min
Similasan
Solaray
Solgar
Source Naturals
TrimSpa
(Nutramerica)
Twinlab
Ultimate Meal
(Ultimate Life)
World Nutrition
(Vitalzym)
Youthful Essentials
Zand
Zymitol (Generation
+)

*List All Brands .....*

**Search For**

**Browse** | Acidophilus

Product Search Results Page

Top of Page

Home | Shop By Brand | Shop By Catalog | Education | Contact | Shipping Policy | Text Base Catalog

Email info@betterlife.com | Phone (800) 317-7150 or (714) 547-1620

Conditions of Use | Privacy Notice © 1996-2001, betterlife.com, LLC.

Top of Page

≋JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS

PHARMA BASE S.A.
ASPIRATION TRUST REG.

(b)  County of Residence of First Listed Plaintiff     Switzerland
(EXCEPT IN U.S. PLAINTIFF CASES)

(c)  Attorney's (Firm Name, Address, and Telephone Number)
Patricia S. Rogowski, Connolly Bove Lodge & Hutz LLP
P.O. Box 2207, Wilmington, DE  19899     302-658-9141

## DEFENDANTS

HVL LLC
HI-VIDOMIN LABORATORIES, INC.

County of Residence of First Listed Defendant     Pittsburgh, PA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☑ 3   Federal Question
(U.S. Government Not a Party)

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                  and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☑ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V.  ORIGIN   (Place an "X" in One Box Only)

☑ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing  (Do not cite jurisdictional statutes unless diversity):
15 USC 1125

Brief description of cause:
TRADEMARK INFRINGEMENT

## VII.  REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☑ Yes   ☐ No

## VIII.  RELATED CASE(S)
IF ANY

(See instructions):

JUDGE     SUE L. ROBINSON

DOCKET NUMBER     06-305-SLR

DATE
July 23, 2007

SIGNATURE OF ATTORNEY OF RECORD
*Patricia S Rogowski*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No.  0 7 - 4 5 8

## ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

### *NOTICE OF AVAILABILITY OF A*
### *UNITED STATES MAGISTRATE JUDGE*
### *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 3 _____ COPIES OF AO FORM 85.

7/23/07
_____
(Date forms issued)

_____
(Signature of Party or their Representative)

Parcels
_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action